```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


IN RE REMICADE ANTITRUST        :    CIVIL ACTION
LITIGATION                      :
                                :
                                :
This document relates to:       :
                                :
Walgreen Co. and The Kroger Co. :    No. 18-cv-2357
Action                          :
```

**ORDER**

AND NOW, this 4TH day of December, 2018, upon consideration of Defendants' Motion to Dismiss (Doc. No. 36), Plaintiffs' Response thereto (Doc. No. 38), and Defendants' Reply in Support thereof (Doc. No. 41), it is hereby ORDERED as follows:

1. Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss Plaintiffs' assigned antitrust claims is converted into a summary judgment proceeding so that Plaintiff has a reasonable opportunity to present all material relevant under Fed. R. Civ. P. 56.  Motions must be submitted within forty-five (45) days and any factual development shall be limited to whether the assignment to Retailer Plaintiffs was valid, and if so, whether Plaintiffs' antitrust claims are encompassed by the anti-assignment provision in the Distributor Agreements between Defendants' affiliate and Wholesalers.

    2. Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss Plaintiffs' direct purchaser antitrust claims is DENIED.[1]

---

[1] Before the Court is Defendants' Johnson & Johnson and Janssen Biotech, Inc. (collectively "Janssen") ("J&J") Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Doc. No. 36), Plaintiffs' Walgreen Co. and The Kroger Co. ("Retailer Plaintiffs") Opposition thereto (Doc. No. 38), and Defendants' Reply in Support thereof (Doc. No. 41).

    This case arises from Plaintiffs' allegations that Defendants violated federal antitrust statutes through an anticompetitive scheme to exclude competition, maintain a monopoly over, and artificially inflate prices in the biologic infliximab market. Pls' Compl. ¶1. Plaintiffs are retail stores which dispense prescription drugs including Defendants' biologic infliximab, Remicade, to the public. Id. at ¶12. Plaintiff Walgreen is suing on behalf of itself and as the assignee of AmerisourceBergen Drug Corporation, a pharmaceutical wholesaler that directly purchased Remicade from Defendants for resale to Walgreen. Id. Plaintiff Kroger is suing on behalf of itself and as the assignee of Cardinal Health, Inc., pharmaceutical wholesaler that directly purchased Remicade from Defendants for resale to Kroger. Id. at ¶13. Plaintiffs allege they have paid and continue to pay overcharges for their purchases of Remicade as a result of Defendants' "Biosimilar Readiness Plan," an anticompetitive scheme involving exclusive agreements and rebate bundling in Defendants' contracts with insurers and health care providers that forecloses the ability of lower-priced biosimilar versions of Remicade to compete. Id. at ¶6, ¶¶8-9, ¶41, ¶45-46, ¶48, ¶59. These allegations stem from facts set forth in this Court's Memorandums denying J&J's motion to dismiss Pfizer's complaint and denying in part J&J's motion to dismiss Direct and Indirect Purchasers' amended complaints. See Pfizer Inc. v. Johnson & Johnson, No. 17-cv-4180, 2018 U.S. Dist. LEXIS 135261 (E.D. Pa. Aug. 8, 2018); Doc. No. 58). See Direct and Indirect Purchasers v. Johnson & Johnson, No. 17-cv-04326 and No. 18-cv-00303. Therefore, the Court will only discuss facts relevant to this motion.

    The Distributor Agreements between Defendants' affiliate, JOM, and Wholesalers (Amerisource Bergen and Cardinal Health) include an assignment provision that conditions assignment of rights or obligations "under this agreement" on the "prior written consent of the other party." (§4.4, J&J Mot. at 17, Doc. No. 36-4).

    Defendants first ask this Court to dismiss Plaintiffs' claims on the ground that Plaintiffs lack antitrust standing because the assignments under which they claim violations of the Sherman Act are invalid in the absence of Defendants' consent. (J&J Mot. at 15, Doc. No. 36-2). Second, Defendants argue that even if the assignments are valid, Plaintiffs have failed to specifically allege that Wholesalers expressly assigned statutory antitrust rights. Id. Plaintiffs, on the other hand, argue that their federal antitrust claims do not "arise under" the Distributor Agreements, and therefore are not encompassed by the "anti-assignment" provision of the Agreements.

    When considering a defendant's motion to dismiss under Fed. R. Civ. P. 12 (b)(6), "a court 'must consider only the complaint, exhibits

---

attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents.'" Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 273 (3d Cir. 2016) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). To survive [12(b)(6)] dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Rule 12 (b)(6) requires that those specific allegations [in a complaint] be accepted as true and viewed in the light most favorable to [the plaintiff]." Hartig Drug Co., 836 F.3d at 274.

The Third Circuit clarified in Hartig Drug Co. that where an indirect purchaser plaintiff has "predicated its antitrust standing on an assignment" from a direct purchaser; and where indirect purchaser plaintiff does not mention or attach the distributor agreement in their complaint, nor cite it as a matter of public record, nor claim the agreement forms a basis for any of their claims, a District Court cannot "properly consider[] it for purposes of a Rule 12 (b)(6) motion to dismiss." Id. Under Hartig Drug Co., in order to properly consider documents like the Distributor Agreements here, that are extrinsic to Retailer Plaintiffs' complaint, we convert "[the 12(b)(6) motion] into a summary judgment proceeding and afford the plaintiff a reasonable opportunity to present all material made pertinent to a summary judgment motion by Rule 56." Id. (quoting JM Mech. Corp. v. United States, 716 F.2d 190, 197 (3d Cir. 1983)); (citing Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989)).

1. Plaintiffs' Assigned Antitrust Claims

In an analogous Third Circuit case, Hartig Drug Co., indirect purchaser Hartig alleged that defendants, pharmaceutical manufacturers of eyedrops, had violated federal antitrust laws by suppressing competition by generic drugs and charging supracompetitve prices for their product. Hartig claimed antitrust standing to sue because AmerisourceBergen Drug Corporation had expressly assigned its rights to Hartig, including the right to bring antitrust actions. Hartig Drug Co., 836 F.3d at 264. Similarly, here, Retailer Plaintiffs acknowledge that as indirect purchasers they are barred under Illinois Brick from bringing antitrust claims arising from Defendants' alleged anticompetitive conduct. See Ill. Brick Co. v. Illinois, 431 U.S. 720, 97 S. Ct. 2061 (1977) (holding that only direct purchasers have standing to sue under federal antitrust statutes). Therefore, to consider whether Retailer Plaintiffs have antitrust standing as indirect purchaser assignees, and, subsequently, to consider whether the distributor agreement encompasses their antitrust claims (making those claims subject to the anti-assignment provision), we need to interpret the Agreements. See Wallach v. Eaton Corp., 837 F.3d 356, 366 (3d Cir. 2016); In re Fine Paper Litig., 632 F.2d 1081, 1090 (3d Cir. 1980).

Thus, pursuant to Hartig Drug Co., we convert "[the 12(b)(6) motion] into a summary judgment proceeding. . . .so that the parties may have the opportunity to make their arguments under the proper procedural framework, with its attendant safeguards." 836 F.3d at 274.

2. Plaintiffs' Unassigned Antitrust Claims

Plaintiffs additionally bring claims for overcharges on direct purchases of Remicade and for injunctive relief. (Pls' Opp. at 38).

---

Defendants move to dismiss Plaintiffs' unassigned antitrust claims for failure to sufficiently allege antitrust injury as a result of Defendants' alleged anticompetitive conduct.  Defendants primary argument is that Plaintiffs fail to plead specific facts showing that Pfizer and Merck were excluded from competing in the infliximab market by Defendants' Biosimilar Readiness Plan, rather than choosing not to compete.  (J&J Mot. at 18).

To establish antitrust injury, Plaintiffs "must show both that [Defendants] engaged in anticompetitive conduct and that [they] suffered antitrust injury as a result." Eisai, Inc. v. Sanofi Aventis U.S., LLC, 821 F.3d 394, 402 (3d Cir. 2016). Antitrust injury is "'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 110 S. Ct. 1884 (1990) (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). "This standard, on a motion to dismiss, requires an antitrust plaintiff to allege facts capable of supporting a finding or inference that the purported anticompetitive conduct produced increased prices, reduced output, or otherwise affected the quantity or quality of the product." In re EpePen ((Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig., No. 2785, 2017 U.S. Dist. LEXIS 209710, at *64, 65 (D. Kan. Dec. 21, 2017) (citing National Collegiate Athletic Ass'n v. Board of Regents, 468 U.S. 85, 113 (1984); Cohlmia v. St. John Medical Center, 693 F.3d 1269, 1281 (10th Cir. 2012); Mathews v. Lancaster Gen. Hosp., 87 F.3d 624, 641 (3d Cir. 1996)).

"The existence of antitrust injury is not typically resolved through motions to dismiss" but rather "after discovery, either on summary judgment or after trial." Brader v. Allegheny Gen. Hosp., 64 F.3d 869, 876 (3d Cir. 1995); In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig., No. 13-md-2445, 2017 WL 4910673, at *14 (E.D. Pa. Oct. 30, 2017) ("Suboxone II") (following "the Third Circuit's caution that the existence of antitrust injury is not typically resolved through motions to dismiss.").

In the related actions, Pfizer Inc. v. Johnson & Johnson, No. 17-cv-4180, 2018 U.S. Dist. LEXIS 135261 (E.D. Pa. Aug. 8, 2018), Doc. No. 58, and Direct and Indirect Purchasers v. Johnson & Johnson, No. 17-cv-04326 and No. 18-cv-00303, we addressed Defendants' same argument for dismissal: Plaintiffs' failure to allege antitrust injury on the ground that Plaintiffs have not sufficiently shown competitors were unable to compete. We apply the same reasoning here, where Retailer Plaintiffs' antitrust allegations derive from the same facts, that Defendants' Biosimilar Readiness Plan foreclosed competition from biosimilar infliximab drugs and resulted in overcharges to Plaintiff purchasers.  As in Hartig Drug Co., we find that "[Retailer Plaintiffs'] complaint plainly and repeatedly emphasizes that, as a result of the Defendants' anticompetitive behavior in [blocking lower priced biosimilar versions of Remicade], [Plaintiffs have] paid inflated prices for those products.  Those allegations, together with the complaint's specific descriptions of anticompetitive behavior indulged in by the Defendants, are sufficient to establish a judicially redressable injury-in-fact that is fairly traceable to the Defendants." Hartig Drug Co., 836 F.3d at 272.  As we held in Pfizer Inc. v. Johnson & Johnson, Defendants' argument that competitors may have been unable to compete for reasons distinct from Defendants' anticompetitive conduct is not grounds for dismissal.  "'The existence of possible

BY THE COURT:


_S/J. CURTIS JOYNER__
J. CURTIS JOYNER,   J.

---

alternative causes of an antitrust injury is not a valid ground for dismissal.'  In other words, an antitrust plaintiff is not required to disprove all other possible alterative causes to survive a motion dismiss." <u>Pfizer Inc.</u>, No. 17-cv-4180, 2018 U.S. Dist. LEXIS 135261 at *16-17 (E.D. Pa. Aug. 8, 2018) (quoting <u>In re EpePen</u>, 2017 U.S. Dist. LEXIS 209710, at *76.).  Factual development may reveal that competitors' inability to successfully compete is not due to J&J's conduct, yet that argument is misplaced at this stage of the proceedings.  We therefore deny Defendants' motion to dismiss Retailer Plaintiffs' unassigned federal antitrust claims.