IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


WALGREEN CO., el al.,                    :
                                         :
         Plaintiffs,                     :      CIVIL ACTION
                                         :
    v.                                   :      No. 18-2357
                                         :
JOHNSON & JOHNSON, et al.,               :
                                         :
         Defendants.                     :


**MEMORANDUM**

**JOYNER, J.**                                    **March 25, 2019**

        Before the Court are Defendants' Motion for Summary

Judgment (Doc. No. 50), Plaintiffs' Opposition thereto (Doc. No.

54), Defendants' Reply in Support thereof (Doc. No. 56), and

Plaintiffs' Sur-reply thereto (Doc. No. 57).  For the reasons

set forth below, we grant Defendants' Motion.

        This case arises from Plaintiffs' Walgreen Co. and The

Kroger Co. ("Retailer Plaintiffs") allegations that Defendants

Johnson & Johnson and Janssen Biotech, Inc. (collectively

"Janssen") ("J&J") violated federal antitrust laws through an

anticompetitive scheme to exclude competition, maintain a

monopoly over, and artificially inflate prices for Defendants'

biologic infliximab drug, Remicade.  Pl. Comp. ¶1.   These

allegations stem from facts set forth in this Court's

Memorandums denying J&J's motion to dismiss Pfizer's complaint

1

and denying in part J&J's motion to dismiss Direct and Indirect Purchasers' amended complaints. See Pfizer Inc. v. Johnson & Johnson, No. 17-cv-4180, 2018 U.S. Dist. LEXIS 135261 (E.D. Pa. Aug. 8, 2018); Doc. No. 58. See Direct and Indirect Purchasers v. Johnson & Johnson, No. 17-cv-04326 and No. 18-cv-00303. In the instant case, Plaintiffs, indirect purchasers, allege that inflated prices for Remicade were passed on to them as overcharges on their purchases of the drug from pharmaceutical wholesalers ("Wholesalers"), AmerisourceBergen Drug Corporation and Cardinal Health, Inc. Wholesalers purportedly assigned to Plaintiffs their "rights" under their distributor agreements with JOM Pharmaceutical Services, Inc., a subsidiary of J&J.

At the heart of the dispute here is Defendants' argument that Plaintiffs lack antitrust standing because Wholesalers' purported assignment of "rights" under the Agreements was void pursuant to an anti-assignment provision. Plaintiffs maintain that their antitrust claims are not encompassed by the purported assignments, and may proceed.

## I.  Factual Background

The following facts are undisputed: Defendants manufacture and market Remicade. (Pl. Resp. to Def. Stmt. Facts at ¶2, Doc. No. 54-1). Plaintiffs purchase Remicade from AmerisourceBergen Drug Corporation ("Amerisource") and from Cardinal Health, Inc. ("Cardinal"), pharmaceutical wholesalers who purchase Remicade

2

directly from Defendants.  Id. at ¶5.  Wholesalers' direct

purchases of Remicade are governed by Distribution Agreements

(together, "the Agreements") with JOM Pharmaceutical Services,

Inc. ("JOM").  Id. at ¶6.  The Agreements are governed by New

Jersey law.  Id.  Section 4.4 of the Agreements between

Wholesalers and Defendants each includes a non-assignment

provision containing the following language:

> Except as provided in this section, neither party may
> assign, directly or indirectly, this agreement or any of
> its rights or obligations under this agreement, either
> voluntarily or involuntarily (whether by merger,
> acquisition, consolidation, dissolution, operation of law,
> change of control or otherwise), without prior written
> consent of the other party. . . .Any purported assignment
> in violation of this section will be void.

Def. Br. Exs. A and B, Doc. 50-3.

On January 23, 2018, Wholesalers purportedly assigned their

claims against Defendants over alleged overcharges for Remicade

to Plaintiffs.  (Pl. Resp. to Def. Stmt. Facts at ¶10, Doc. No.

54-1 at 3).  The purported assignment agreements stated,

"[Amerisource] hereby conveys, assigns and transfers to

Walgreens all of its rights, title and interest in and to all

Direct Purchaser Claims it may have against Defendants under the

antitrust laws of the United States." "[Cardinal] hereby

conveys, assigns and transfers to Kroger all of its rights, title and interest in and to all Direct Purchaser Claims it may have against Defendants under the antitrust laws of the United States." Id.; See Def. Br. Exs. C and D.

On June 6, 2018, Plaintiffs filed the underlying action against Defendants. See Pl. Compl., Doc. No. 1. Plaintiffs' complaint asserts federal antitrust claims purportedly assigned to them by Wholesalers, in addition to asserting claims on their own behalf. (Pl. Resp. to Def. Stmt. Facts at ¶12, Doc. No. 54-1). On December 7, 2018, this Court denied Defendants' motion to dismiss Plaintiffs' direct purchaser antitrust claims (those that do not depend on assignments from Wholesalers). See Doc. No. 48, fn 2. Now, Plaintiffs concede that "their purchases of Remicade were indirect" and that any purchases not covered by a purported assignment "will not be included in [their] damages model." Pl. Opp. at 54.

In our December 7th, 2018 Order we also converted Defendants' motion to dismiss Plaintiffs' indirect purchaser antitrust claims (Doc. No. 36) into a summary judgment proceeding, pursuant to the Third Circuit's direction that "[i]f matters outside the bounds of the complaint are considered by the district court, the merits of the claim must be tested by way of motion for summary judgment." JM Mech. Corp. v. United States, 716 F.2d 190, 197 (3d Cir. 1983). The instant motion

for summary judgment is fully briefed and ripe for the Court's adjudication, now that Plaintiffs have been afforded "a reasonable opportunity to present all material" pertinent under Fed. R. Civ. P. 56.  See Doc. No. 48.

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  New Jersey law, which we find applicable to the issue of non-assignment provisions in the distributor Agreements in this case, instructs that "interpretation or construction of a contract is usually a legal question for the court, 'suitable for a decision on a motion for summary judgment.'"  Driscoll Const. Co. v. State Dep't of Transp., 853 A.2d 270, 276 (N.J. App. Div. 2004) (citation omitted).

"As to materiality. . . .[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For a dispute about a material fact to be "genuine," the evidence must be "such that a reasonable jury" could find for the nonmovant.  In re Tribune Media Co., 902 F.3d 384, 392 (3d Cir. 2018) (citing Anderson, 477 U.S. at 248.  To survive summary judgment, the party opposing it "must set forth specific facts" "that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250 (citing <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288-289 (1968)). At summary judgment we view the evidence "in the light most favorable to the party opposing the motion." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (quoting <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)).

**III. DISCUSSION**

Defendants, J&J, assert four arguments for summary judgment. First, Defendants argue that they are parties to the Agreements. Second, Defendants argue that the anti-assignment provisions in the Agreements encompass Plaintiffs' statutory antitrust claims. Third, Defendants argue that the anti-assignment provisions are enforceable under New Jersey law. Fourth, Defendants argue that Wholesalers' assignments to Plaintiffs are void because they were made without Defendants' consent, thereby violating the clear and specific anti-assignment provisions. In sum, Defendants argue that Plaintiffs are barred from asserting an antitrust cause of action because these statutory claims would not exist but for the void assignments. Plaintiffs oppose summary judgment on three grounds: first, that Defendants are not parties to the Agreements; second, that Plaintiffs' antitrust claims are

outside the scope of the Agreements; and third, that even if the Wholesalers' assignments violated the anti-assignment provisions, federal common law allowing for valid assignment of antitrust claims should preempt state law enforcing anti-assignment provisions.

*A. Whether Defendants are Parties to the Agreements*

Defendants seek to enforce the anti-assignment provisions of the Agreements, arguing that they are parties to the Agreements. Defendants argue that the Agreement discloses that they are the parent company (Johnson & Johnson) and affiliate (Janssen) of the signatory, JOM, to whom they delegated authority to enter Agreements governing distribution of Defendants' drug, Remicade. Furthermore, Defendants argue, the Agreements explicitly apply to claims involving JOM's parent company, subsidiaries, or affiliates. Exs. A and B §§ 4.21(a). Plaintiffs, on the other hand, argue that JOM signed the Agreements not as Defendants' agent, but as the only party to the contract. Therefore, Plaintiffs' argument goes, Defendants cannot oppose the purported assignments because they are not parties to the Agreements. Pl. Opp. at 9. Id. We find there is no dispute that Defendants are parties to the Agreements.

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and

7

subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restat 3d of Agency, § 1.01 (3rd 2006). New Jersey law, applying the Restatement (Third) of Agency §6.01, has held that a "principal will be bound by contracts with third parties entered into by an agent with actual authority to act on his behalf." Allegheny/AA Bail Bonds, Inc., Atty. in Fact for Allegheny Cas. Co. v. Wright, Nos. A-2066-07T2, A-2071-07T2, 2011 N.J. Super. Unpub. LEXIS 699 at *15 (Super. Ct. App. Div. Mar. 22, 2011). To create "[a]ctual authority (express or implied)" the principal need only communicate "written or spoken or other conduct" that, "reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Id. (quoting Jennings v. Reed, 381 N.J. Super. 217, 231 (Super. Ct. App. Div. 2005) (citations omitted)). Generally, in contracts where the principal's identity is known to the other contracting party, "the principal, not the agent, is liable on the contract." Looman Realty Corp. v. Broad St. Nat'l Bank, 32 N.J. 461, 476 (1960). "Nevertheless, an agent acting for a disclosed principal may agree with the other contracting party that the agent also will be a party to the contract." Id. (citation omitted). Ordinarily, however, "[a] principal who deals with third parties through an agent. . .expects to become a party to transactions entered into on the principal's behalf

8

by the agent.  When the third party knows the identity of the principal, the third party ordinarily expects that the principal, and not the agent, will become a party to the transaction."  Restat 3d of Agency, § 6.01 Cmt b (3rd 2006).

In this case, JOM, the signatory to the Agreements, is a subsidiary of Johnson & Johnson and the agent of Janssen Biotech, Inc. for the purpose of entering distribution contracts.  "Schedule A" of the Agreements (Ex. A at 25, Ex. B at 23) names Janssen Biotech, Inc. as an "affiliate" (also referred to as a "Manufacturer," Exs. A and B at 1) of JOM for purposes of the Agreements.  The language of the Agreements expressly provides that JOM's affiliates have delegated authority to JOM to enter distribution agreements on their behalf.  <u>See</u> Exs. A and B at 1, "[JOM] is an Authorized Distributor of Record for the Products with authority delegated by the Manufacturers to designate additional Authorized Distributors of Record (each an "ADR") on their behalf for distribution of Products. . . .[JOM] and its affiliates desire to retain Distributor [Wholesalers] to provide the necessary Services."

Here, we find no genuine dispute that for the purposes of the distribution Agreements, JOM is an agent of Defendants, as JOM was delegated authority to enter the Agreements on behalf of their named affiliates, the "principals."  There is also no

dispute that the principals were "disclosed" to the other contracting party in Schedule A of the Agreements.  Therefore, applying New Jersey law, we find it is beyond reasonable dispute that Defendants are parties to the Agreements when they are named in the Agreement as an "affiliate" of the signatory and when the Agreements provide that JOM is authorized to enter the Agreement on the affiliates' (Defendants') behalf.  See Allegheny/AA Bail Bonds, Inc., Atty. in Fact for Allegheny Cas. Co., 2011 N.J. Super. Unpub. LEXIS 699 at *15.

   *B. Applicable Law*

   The Parties do not dispute that New Jersey law applies to the anti-assignment provisions.  See Pl. Opp. at 6, "[b]oth sides agree that the two Distribution Agreements are governed by state law – in this case, the law of New Jersey. . . .[which] generally follows the Restatement of Contracts."  See Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 442 (3d Cir. 1999).

   The dispute is over whether Plaintiffs' antitrust claims are encompassed by the anti-assignment provisions in the Agreements.  Defendants contend that the Agreements' prohibition on assignment of "rights" without consent necessarily includes a prohibition on assignment of statutory causes of action, such as the right to recover overcharge damages.  Accordingly, where the anti-assignment provisions have been violated, under New Jersey law the purported assignments are void, and, as a result,

10

Plaintiffs' have no basis on which to assert their statutory claims. By contrast, Plaintiffs argue that the anti-assignment provisions narrowly prohibit performance of the contract, while the right to bring a statutory antitrust claim is "in some way independent of, or pre-existing to, the 'rights or obligations'" that the provisions prohibit from being assigned. Def. Br. at 12. If Plaintiffs' statutory claims exist independent of the Agreements, Plaintiffs argue, then federal common law, not New Jersey law, will resolve the issue at summary judgment. We find there is no reasonable dispute that the anti-assignment provisions prohibited assignment of rights under the Agreements, including statutory causes of action; therefore, we grant summary judgment for Defendants, where Plaintiffs' antitrust claims exist by virtue of void assignments.

It is established that "under controlling federal law,. . .antitrust claims are assignable." Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 425, 431 (3d Cir. 1993) (quoting In re Fine Paper Litig., 632 F.2d 1081, 1090 (3rd Cir. 1980)). In Wallach v. Eaton Corp., the Third Circuit clarified that in the antitrust context, "an effective assignment must directly reference antitrust claims in order to ensure that any transfer of direct purchaser status is crystal clear, thereby 'eliminat[ing] any problems of split recoveries or duplicative liability.'" Wallach v. Eaton Corp., 837 F.3d 356, 370 (3d Cir.

2016) (quoting Gulfstream III Assocs., Inc. v. Gulfstream

Aerospace Corp., 995 F.2d 425, 440 (3d Cir. 1993)).  The Wallach

court went on to hold that under the Restatement, "consideration

is not required under federal common law to give effect to an

otherwise express assignment."  Id. at 371.

However, a threshold question is whether the assignment in

issue is valid.  See Lehigh Valley Hosp. v. UAW Local 259 Soc.

Sec. Dep't, No. 98-4116, 1999 U.S. Dist. LEXIS 12219, at *9

(E.D. Pa. Aug. 10, 1999) (reasoning that "[b]efore this Court

even addresses whether the assignee of a plan participant has

standing to sue [on the basis of statutory claims] under ERISA,

however, it must first determine if the alleged assignment in

this case is valid.").  It follows that when considering the

validity of an assignment of "rights," the Third Circuit has

held, albeit in the context of statutory ERISA claims, not

antitrust claims, that there is "no compelling reason to stray

from the 'black-letter law that the terms of an unambiguous

private contract must be enforced.'"  Am. Orthopedic & Sports

Med. v. Indep. Blue Cross Blue Shield, 890 F.3d 445, 453 (3d

Cir. 2018) (citation omitted).  A district court is "correct" to

look to the law of the state in the distributor Agreement's

choice-of-law provision to determine the effect of the

Agreement, and to apply that state's principles of interpreting

assignment provisions.  See Hartig Drug Co. v. Senju Pharm. Co.,
836 F.3d 261, 274 (3d Cir. 2016).

Furthermore, the Third Circuit made clear in Wallach, in
line with §317 of the Restatement, that it rejects the
"antiquated distinction" between "rights" under a contract,
which may be assigned or contractually prohibited from being
assigned, and non-contractual causes of action: "the historical
common-law rule that a chose in action could not be assigned has
largely disappeared."  837 F.3d at 369 (quoting Restat 2d of
Contracts, § 317 cmt (c)).  See In re Fine Paper Litig., 632
F.2d at 1090 ("[a]lthough the common law did not favor the
assignment of causes of action, by and large that attitude has
been overcome.").  See also Am. Orthopedic & Sports Med., 890
F.3d at 453 (quoting City of Hope Nat'l Med. Ctr. v. Healthplus,
Inc., 156 F.3d 223, 229 (1st Cir. 1998)) (holding that statutory
causes of action are encompassed by non-assignment provisions
when it joined "an overwhelming consensus among Courts of
Appeals that 'ERISA leaves the assignability or non-
assignability of [statutory rights] under ERISA-regulated
welfare plans to the negotiations of the contracting parties.").

Here, we agree with Defendants that New Jersey law, not
federal common law applies to the assignment issue in this case.
Plaintiffs' argument that federal common law preempts even an
invalid assignment is not supported by Third Circuit law.

_Wallach_ and _Gulfstream_, holding that antitrust claims are assignable under federal common law, apply to valid assignments only. Here, there is no valid assignment. The anti-assignment provisions in the distributor Agreements between Wholesalers (direct purchasers) and Defendants (drug manufacturer) clearly manifested an intent to prohibit assignment of any rights or obligations under the Agreements without the consent of either party; indeed, the provisions specified that assignments in violation of the provisions would be void. Wholesalers violated these provisions by purporting to assign their rights under the Agreements to Retailer Plaintiffs, without Defendants' consent. We agree with Defendants that "neither _Wallach_, nor _Gulfstream_, nor _In re Fine Paper Litig._ (none of which addresses anti-assignment provisions affecting statutory causes of action in the antitrust context) supports the notion that the 'federal common law' of antitrust assignment instruments overrides an anti-assignment clause in the underlying sales contract that is valid as a matter of state law." Def. Rep. Br. at 12.

Finally, the Third Circuit has adopted the "plain meaning" approach to whether statutory claims are encompassed within the scope of a non-assignment provision prohibiting assignment of "rights" under a contract. Here, Plaintiffs try to advance the argument rejected by the First Circuit in _City of Hope_ (whose reasoning the Third Circuit adopted in _American Orthopedic_),

"[i]n effect, [that we] read into ERISA's allowance for the assignability of ERISA-regulated welfare plan benefits a bar to the contractual non-assignability of such benefits." City of Hope Nat'l Med. Ctr., 156 F.3d at 229. Similarly here, Plaintiffs ask us to read into federal common law's allowance for assignability of antitrust claims a bar to the contractual non-assignability of those claims.

Yet, there is no federal common law, nor New Jersey state contract law, nor grounding in the Restatement, to support this view. The First Circuit has held and the Third Circuit has concurred that limiting non-assignment provisions so that they do not pertain to "causes of action" ("as distinguished from 'rights or benefits'") "would strain the plain meaning of the contract language at issue in this case." Id. at 229. We agree. To read the anti-assignment provisions here, which clearly prohibit assignment of "this agreement *or any of its rights or obligations under this agreement . . . without the prior written consent*" (Exs. A and B §§4.4) (emphasis added), to limit "rights" as distinguished from "causes of action," would "strain the plain meaning" of the contract. See Wallach v. Eaton Corp., 837 F.3d at 369 (noting that "a distinction" between 'rights' under a contract and 'causes of action' arising by virtue of the existence of the contract has been abandoned by the Restatement, §317, and by the Third Circuit.).

15

Extending this reasoning to non-assignment clauses in the context of statutory ERISA claims, the Third Circuit has recently held that "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield, 890 F.3d 445, 453 (3d Cir. 2018). Plaintiffs argue that American Orthopedic applies only within the ERISA context and only where the statutory claims "aris[e] out of the insurers' breach of the insurance contract, not [to] antitrust claims based on an 'extrinsic legal regime' unrelated to the rights and obligations created by the distribution agreement." Pl. Br. at 17 (citing Hartig Drug, 836 F.3d at 275 n.17). Although the anti-assignment provision in Hartig arises in the antitrust context, while American Orthopedic addresses anti-assignment clauses in the ERISA context, the anti-assignment language in Hartig differs from the anti-assignment language here.

The Hartig anti-assignment clause states, "[t]his Agreement may not be assigned by either party without the prior written consent of the other party. Notwithstanding the forgoing, either party *may assign its rights and obligations* hereunder *without the consent* of the other party to a subsidiary or affiliate . . . ." 836 F.3d at 275 (emphasis added). Here, by contrast, the assignment provisions state, "neither party may assign. . . this agreement *or any of its rights or obligations*

16

*under this agreement . . . without the prior written consent* of
the other party," Exs. A and B §§4.4 (emphasis added).  Thus,
the anti-assignment provision in <u>Hartig</u> prohibits assignment
only of the Agreement, while the anti-assignment provision here
clearly and specifically prohibits assignment of "rights" under
the Agreement without consent of the other contracting party.

We find Plaintiffs' argument that the non-assignment
provisions here do not encompass rights to bring statutory
causes of action untenable.  Without the assignment of
Wholesalers' rights under the Agreements, Plaintiffs would have
no basis from which to assert the Wholesalers' claim for
overcharges on purchases of Remicade.  Thus, Plaintiffs'
antitrust claims flow from the purported assignment of
Wholesalers' rights.  Therefore, we find that there is no
genuine dispute that Plaintiffs' allegations of anticompetitive
overcharges for Remicade (Compl. ¶¶ 1, 60-61) are "assignment-
based claims."  Def. Br. at 10.  Accordingly, New Jersey law
applies when interpreting the anti-assignment provisions of the
Agreements.  <u>See</u> <u>Hartig Drug</u>, 836 F.3d at 274.

*C. Applying New Jersey Law to the Anti-Assignment Provisions*

Defendants argue that under New Jersey law, the anti-
assignment agreement invalidates Wholesalers' assignment of
their rights under the agreement, since Defendants did not
consent.  We agree with Defendants and grant summary judgment on

the grounds that it is beyond reasonable dispute that the anti-assignment provision manifested the parties' intent to prohibit assignment of rights under the Agreement, including antitrust causes of action.

Where an anti-assignment provision unambiguously expresses the clear intent to prohibit assignment of "rights" under a contract, New Jersey law will enforce the provision.  See Torpey v. Blue Cross Blue Shield of Tex., Civil Action No. 12-cv-7618 (JAP), 2014 U.S. Dist. LEXIS 11412 (D.N.J. Jan. 30, 2014) (holding that "where a plan contains an anti-assignment provision, the provision is enforceable and the assignment is ineffectual.").  For rights to "to 'arise under' an agreement, a claim [based on those rights] need not be identifiable as an issue explicitly covered by the agreement, but merely must be engendered by virtue of the relationship the agreement established."  Am. Fin. Capital Corp. v. Princeton Elecs. Prods., No. 95-4568, 1996 U.S. Dist. LEXIS 3412, at *27-28 (E.D. Pa. Mar. 19, 1996) (citing Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH, 585 F.2d 39 (3d Cir. 1978)).

"As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions." Davidowitz v. Delta Dental Plan of Cal., Inc., 946 F.2d 1476, 1478 (9th Cir. 1991).  See Med-X Glob., LLC v. Azimuth Risk Sols., LLC, No. 17-13086, 2018 U.S. Dist. LEXIS 60543 at *6

(D.N.J. Apr. 10, 2018) (quoting Somerset Orthopedic Assocs.,
P.A. v. Horizon Blue Cross & Blue Shield of N.J., 345 N.J.
Super. 410, 415 (Super. Ct. App. Div. 2001)) ("[a]nti-assignment
provisions are generally enforceable under contract law, derived
from a contracting party's freedom to place restraints on
alienation.").

New Jersey courts interpreting assignment provisions apply
the Restatement.  See Somerset Orthopedic Assocs., P.A., 345
N.J. Super. at 415.  Indeed, the New Jersey Supreme Court held
in Owen that §322 of the Restatement "embodies the general, now-
majority rule that contractual provisions prohibiting or
limiting assignments operate only to limit the parties' right to
assign the contract, but not their power to assign, unless the
parties manifest with specificity an intent to the contrary."
Owen v. CNA Ins/Cont'l Cas. Co., 771 A.2d 1208, 1214 (N.J. 2001)
(citing Restat 2d of Contracts, § 322 (2nd 1981)).  Thus, as the
court held in Somerset, "[w]here a contract uses specific and
express language sufficiently manifesting an intention to
prohibit the power of assignment without the consent of one or
more of the contracting parties, courts generally uphold these
contractual anti-assignment clauses."  Somerset Orthopedic
Assocs., P.A., 345 N.J. Super. at 415.  To manifest an intent to
limit a party's power to assign, thereby making an assignment
without consent of the other party void, "the non-assignment

provision generally must state that non-conforming assignments (i) shall be 'void' or 'invalid,' or (ii) that the assignee shall acquire no rights or the non-assigning party shall not recognize any such assignment." Id.

Plaintiffs argue that the anti-assignment provisions in the Agreements do not encompass their "rights" to bring statutory antitrust claims, citing district court opinions, none from the Third Circuit, in support. Yet, in United Food & Commer. Workers Local 1776 v. Teikoku Pharma United States, Inc., No. 14-md-02521-WHO, 2015 U.S. Dist. LEXIS 94220 (N.D. Cal. July 17, 2015) ("Lidoderm"); In re TFT-LCD Antitrust Litig., 2011 WL 3475408 (N.D. Cal. Aug. 9, 2011) ("Flat Panel"); and Meijer, Inc. v. Barr Pharms., Inc., 572 F. Supp. 2d 38 (D.D.C. 2008), where district courts found that statutory causes of action for antitrust violations were beyond the scope of non-assignment provisions, the non-assignment clauses "[were] limited to the assignment of duties and obligations under the [distributor agreements] themselves." 2015 U.S. Dist. LEXIS 94220 at *43. The provisions here were not so limited.

The anti-assignment provision in Lidoderm "[did] not clearly prevent wholesalers from assigning claims arising out of antitrust law." 2015 U.S. Dist. LEXIS 94220 at *42. Here, by contrast, the non-assignment provisions here do meet the standard for clear and specific manifestation of an intent to

limit a party's power to assign.  In <u>Owen</u>, the New Jersey
Supreme Court considered a broad anti-assignment provision
stating, "…the aforesaid deferred lump sum payments shall not be
subject to assignment. . . ." 771 A.2d at 1218.  And the Court
viewed the provision's broad language as "merely. . .a covenant
not to assign. [Because] [i]t contains no specific prohibition
on the power to make an assignment, and it does not specifically
state that the assignments are 'void.'"  <u>Id</u>. (quoting <u>Bel-
Ray</u>, supra, 181 F.3d at 442).  In this case, by contrast, the
assignment provisions clearly state, "neither party may assign.
. .this agreement or any of its rights or obligations under this
agreement. . .without the prior written consent of the other
party. . . .*Any purported assignment in violation of this*
*section will be void*." Exs. A and B §§4.4 (emphasis added).
Thus, under New Jersey law interpreting anti-assignment
provisions, we find it is beyond genuine dispute that the anti-
assignment provisions here manifested a clear intent to prohibit
assigning rights under the Agreements without the parties'
consent and expressly indicated such assignments would be void.

Plaintiffs angle for yet another view, arguing that
statutory antitrust claims are not contemplated by language in
the assignment provision barring assignment of "rights."  Yet
New Jersey courts have not treated statutory antitrust claims as
exempted from a clear and specific non-assignment provision.  In

this case, the Wholesalers' rights to recover antitrust damages against Defendants, although statutory in nature, exist "'by virtue of the relationship,' established by the Agreements— indeed, 'there is no context other than [those] preexisting contractual relationship[s] in which [those rights] could have arisen.'" Def. Br. at 11 (quoting Am. Fin. Capital Corp. v. Princeton Elecs. Prods., 1996 U.S. Dist. LEXIS 3412, at *27–28. Thus, we find there is no reasonable dispute that the anti-assignment provisions here encompass Plaintiffs' antitrust claims because their claims exist by virtue of the Agreements and that the assignments of "rights" under the Agreements, without consent of Defendants, are void. Therefore, there is no genuine dispute that Plaintiffs' antitrust claims, which they assert by virtue of void assignments, are barred.

*D. Plaintiffs' Unassigned Claims*

Plaintiffs "do not dispute that their purchases of Remicade were indirect." Pl. Opp. at 9. Accordingly, any claim for overcharges on purchases of Remicade by Plaintiffs arose through the unauthorized assignment by Wholesalers of rights under their distributor Agreements. These assignment-based antitrust claims, grounded in invalid assignments, cannot proceed.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED. An appropriate Order will follow.

22